## RAMON ARELLANO *v.* RAFAEL CHACON.

PREFECTS AND ALCALDES SUPERSEDED BY ORGANIC ACT.—The officers known
as prefects and alcaldes under the provisional government, were super-
seded by the organic act, and by common consent and construction the
probate judges and justices of the peace have respectively succeeded to
their powers and duties.

NEW TRIAL OR REHEARING BY PROBATE COURT.—New trials are peculiar to
courts of common law where jury trials prevail and a rehearing belongs
to chancery jurisdiction, and as the probate court is not provided with a
jury and has no chancery jurisdiction, it can not grant a new trial or re-
hearing after deciding a contested election for justice of the peace, under
the statute.

NO APPEAL IN SUMMARY PROCEEDINGS.—Where a court is authorized to pro-
ceed in a summary manner to determine a question, one of the conse-
quences is that there can be no appeal unless the statute expressly or by
clear implication grants a right of appeal.

NO APPEAL IN CONTESTED ELECTION FOR JUSTICE.—No appeal lies from the
judgment of the probate court in the case of a contested election for the
office of justice of the peace.  Overruling *Quintana* v. *Tompkins, ante,* 29.

APPEAL from the district court for the county of Taos.
The opinion states the case.

*T. D. Wheaton,* for the appellant.

*Ashurst and Tompkins,* for the appellee.

By Court, BENEDICT, C. J.:

At an election for justice of the peace in the pre-
cinct of Chamisal, in the county of Taos, 1855, the
parties in this cause were candidates.  It seems that
Chacon was declared elected, and obtained his certificate.
Arellano contested the election in pursuance of the follow-
ing provision of the statute: "In case any election for
sheriff, justice of the peace, or constable, be contested, the
party contesting shall give eight days' previous notice to
the party opposing, in the same manner as prescribed in
the foregoing section, which contest shall be heard and de-
termined in a summary manner, by the probate court.  In
case any election for other subordinate officers created by law
shall be contested, said contest shall be determined in the
manner prescribed by the probate judge."  Upon notice
being given, the parties met before the probate court, as ap-

pears by the record, and went into trial, and after hearing the case, the court gave judgment in favor of the defendant, Chacon. After this was done, and before the court adjourned "until court in course," Arellano applied for a new trial, and the judge says that "under the proofs produced by him, the court annulled the judgment and granted a new trial, to be had at the next term." This next term came on in January, 1856. Chacon made no appearance, and the court gave judgment in favor of Arellano, and adjudged Chacon to pay the costs. The next day the latter appeared and took an appeal to the district court. At the August term, 1856, the parties appeared in the latter court, and Arellano's counsel moved to dismiss the appeal for various reasons, one of which was, "that no appeal is allowed by law in such cases." The court overruled the motion, and plaintiff excepted. Defendant's counsel then moved to dismiss the suit, and judgment was rendered against the plaintiff for costs; and thereupon he appealed to this court.

The acts of the court, both in overruling the plaintiff's motion and sustaining the defendant's, are assigned for errors. It has been necessary to give so circumstantial a history of this case in order that our opinion may be the better understood. Neither party will derive any benefit from any judgment which we can render, as to the subject-matter of controversy for which the contestant instituted his proceeding. A justice of the peace holds his office for the term of one year. Time and the operation of law have long since put an end to the right which either party may have had to the enjoyment of the office for which both engaged in contest. As for ourselves, we might have so disposed of this case that we would have been relieved from the labor and responsibility of an investigation. We, however, are willing to meet and determine the material points controverted. This seems to be required for the instruction of persons and officers, and for the guidance of courts in all causes of a character similar to this which may hereafter arise.

Before this court this cause has been twice argued, and each time with zeal and ability. It is contended that the

probate court, after having once heard and adjudged the case, put its decision beyond its control; that it possessed no power to annul the judgment, which it had once in due course of trial formally pronounced between the parties, as in this cause; that it could grant no new trial, nor open the case to a rehearing, and that when it gave judgment in the contest, in favor of Chacon, the defendant, it did, so far as it had any power over the matter, determine, confirm, and invest him in the office in controversy, and that it could not, by any proceeding whatever, divest him, subsequent to the judgment made and rendered.

The judicial powers of this territory are clearly vested and carefully distributed by congress, in what is termed the organic act. This act declares that the several courts, both appellate and original, and those of the probate and justices of the peace, should have jurisdiction as limited by law. It then immediately proceeds to prescribe by law, limits to justices of the peace, and confining them beyond the power of the territorial legislature to enlarge, and in the very same sentence vests the supreme and district courts " with chancery as well as common law jurisdiction." So plain and complete an endowment of judicial power in the courts of highest dignity and authority in the territory must be taken as negativing the like jurisdiction in the inferior courts, as also excluding the legislature from the authority to clothe them with the jurisdiction so affirmatively reposed in the supreme and district courts. Now, when a constitution or an organic law simply speaks into existence a probate court, every enlightened lawyer at once knows the functions it is designed to perform. These are of a testamentary character, and such others as may be expressly conferred by the legislature, not inconsistent with the other plain distribution of powers. The power and practice of granting new trials grew up in those courts of " common law and chancery jurisdiction," in the midst of that system of jurisprudence that has been so generally adopted in the United States. New trials were introduced to cure the defects, errors, mistakes, and the like, which juries might have committed in their verdicts. They superseded the

ancient proceeding by attaints against juries for wrong verdicts. They originated in these courts, where the trial by jury was an essential and fixed element. They are authorized in the courts of the United States, where causes are tried by juries. The district courts of this territory may try issues of fact by juries, set aside verdicts for established legal causes, and grant new trials. To exert these high powers, the law has expressly conferred the authority. It is a parcel of that common law jurisdiction of which they are made the depositaries by the organic act. When exercising the chancery jurisdiction granted with the common law, the district courts conform to the rules and usages which compose that peculiar system of jurisprudence. In that system a court may grant a rehearing.

The probate court had not chancery jurisdiction. The law had not provided it with a jury, and it had no power to try this cause by a jury. It had the sole, the absolute power, and that, too, in a "summary manner." That was exerted, and fully, and when that was done, the court's power of adjudication in the cause ended. It had performed the duty required by the statute, and could not unsay and make null its solemn judicial act at its will and pleasure. With or without proper and sufficient evidence, wise or foolish as the act may have been, the court, as far as it could, vested in Chacon, and confirmed to him, the office of justice of the peace, and it could not retrace its steps, divest him of his office, and bestow it upon another.

We come now to another point of grave consideration in this cause, and that is the one made in the district court, and insisted upon here, in substance, that no appeal is allowed by law in cases of contested elections before the probate court. The gravity of the examination of this point is augmented by the fact, that the same point precisely was made and determined in this court, in the case of *Quintana* v. *Tompkins, ante,* 29, at the January term, 1853, and decided in favor of the right to appeal. Although that decision was made by the highest judicial authority within the territory, and pressed by a member of the court of distinguished legal ability, the proposition adjudged against seems still to

be pressed upon the notice and action of the courts, whenever an appeal is taken in the case of a contested election. Such being the case, and however much we may desire to see repose under judicial decisions, we do not feel at liberty to shrink from an examination of the correctness of the grounds upon which the appeal in the case mentioned was sustained.

The sections of the statutory law upon which the court relied as authorizing the appeal are as follows: "Appeals from the judgments of the prefects shall be allowed to the circuit court, in the same manner, and subject to the same restrictions, as in case of appeal from the circuit to the supreme court." "The circuit courts in the several counties shall have appellate jurisdiction from the judgments and orders of the prefects and alcaldes, in all cases not prohibited by law, and shall possess a superintending control over them."

Judicial authorities are here mentioned that are wholly strangers to the organic act, and totally incapable as such of receiving any portion of judicial power. No court nor officer denominated prefect or alcalde can have legal existence under our present organization. Congress has authorized other courts and brought into existence other officers, and the legislature and courts must yield conformity thereto. Here we find prefects and alcaldes perpetuated in the Deavenport revision of the statutes. Yet they were superseded by the organization of the territorial government, and upon the powers and duties of probate courts and justices of the peace being prescribed. The language of the sections above quoted is to be accounted for upon the ground of their having originated and been put in force long before the territorial organization and the passage of any territorial laws in New Mexico. They were promulgated by General Kearny upon his receiving the submission of the inhabitants. By a legislative act of July 14, 1851, the general provisions of the Kearny code, with few exceptions, were continued in force so far as not repugnant to nor inconsistent with the constitution of the United States, the organic act, or any act passed by the assembly then in ses-

sion. Six days after the passage of this act the election
law under which this contest arose was also passed. By
common consent and common construction the probate
courts and probate judges succeeded to the powers and
duties of the prefects and prefects' courts, and justices of
the peace to those of alcaldes. In the section prescribing
the mode by which the election of justices of the peace and
other officers may be contested, it should not be overlooked
that the contest should be heard and determined in a sum-
mary manner by the probate courts. Now the phrases,
summary manner, summary proceeding, and summary con-
victions, when employed in statutes, have a distinct, well-de-
fined technical meaning, and one of the incidents and con-
sequences of such trial or proceeding is that, unless the
legislature grants expressly the power of appeal, none can
be allowed or taken. This position is sustained by high
authorities and every day's practice, and the sweeping
clause that the circuit court shall "have appellate jurisdic-
tion from the judgments and orders of prefects and alcaldes
in all cases not provided by law," must, in its interpretation,
submit to some distinctions and limitations.

Now one very necessary body of summary proceedings
and convictions belonging to all courts and justices of the
peace in this territory to exercise is that of punishing for
contempts, and yet no appeal is allowed from the proceed-
ing and conviction. And why is this? It is because from
the known principles of law, of which courts take judicial
notice, a policy has arisen which does not permit an appeal,
and if the legislative authority at any time extend to change
the rule which this policy sustains, it must say so in express
terms, and that appeals may be taken from orders and judg-
ments of probate courts and justices of the peace punishing
for contempts to be heard *de novo*, as in cases of appeals
from other orders and judgments. The proceedings of
magistrates, including judges of probate and justices of the
peace, in arresting and examining persons charged with
crime, with the view of holding to bail or committing for
safe keeping, are of a summary nature. Yet no one pre-
tends that the judgment or orders of the justice or probate

judge in the case can be taken to the district court by appeal, and that they are embraced in the sweeping language of the sections above quoted.

The reason is, that the officer acts in exercise of a jurisdiction of a known summary nature, and one in which the principles, practice, and policy of the law absolutely prohibit an appeal, and which prohibition is not required to be declared by express statute. The prefects had power (and so now have the probate courts) to appoint overseers of roads, their clerks, treasurers, etc. Could an appeal be taken to the district court from the orders making such appointments under the general language referred to? Power was given to prefects to levy a tax to defray the expenses of their respective counties. Could the district court have received an appeal to try *de novo* the case of the order of the prefect levying such tax? The probate judge of the county of Doña Ana was required by the legislature to order an election to be held in the Mesilla valley precincts. Could the district court have been the recipient of an appeal from the order which the probate judge made? Power was given to the prefect to arrest and have brought before him any one who should keep a dram shop, etc., without license, and "determine the offense in a summary manner, and assess the punishment" at not over five hundred dollars nor less than fifty. Here it is worthy of remark, that in the same statute, immediately following, is the full and express power of appeal granted from the judgments of the prefects in that particular summary proceeding.

Our legislature has provided by statute that if any person shall have in his possession certain public records, and refuse or neglect to deliver the same to the proper officer, he may be arrested and taken before the district judge and be fined and imprisoned in a "summary manner, as for contempt;" and the fine may be assessed as high as five hundred dollars. Here the assembly provided a summary proceeding, and did not intend any appeal, as none is defined, from the district judge. He is intended to act distinct from the district court.

Mr. Greenleaf, in his treatise on evidence, defines "sum-

mary causes by first defining plenary causes," and says that the latter "are those in which the order and solemnity of the law are strictly observed in the regular contestation of the suit," whilst he then says "that summary proceedings are those in which this order and solemnity are dispensed with." Blackstone describes summary proceedings, "except in the case of contempt," as directed by legislative acts, and to be tried without the intervention of a jury, and by the suffrage of such person only as the statute has appointed judge. It is laid down in 6 Cart. 514, that in such proceedings there is no appeal, unless the power is expressly given by the legislature. Mr. Chitty, in his work on practice, in writing of the various statutes which directed summary proceedings, lays down the proposition in the most emphatic manner, that in such cases, no appeal to a higher tribunal could be had, unless an appeal be expressly or by the terms of the particular act clearly impliedly given.

We now turn to the statute itself, by virtue of which the contest in this case was commenced. The section early embodied in this opinion refers to a " foregoing section." That provides, "in case any election for probate judge is contested, the party contesting shall give eight (8) days' previous notice to the opposing party, specifying the grounds of the contest, and if any objections are made to persons having voted, they shall be fully specified. Said contest shall be heard and determined in a summary manner by the circuit (district) court, or by three justices of the peace, selected for the occasion by the contesting and opposing parties." Could the judge of probate sit and try his own case, this section doubtless would never have been enacted. The acting probate judge may sometimes be a party in a contest where he has been a candidate for re-election. Will any lawyer contend that any appeal is provided or can be taken from the decision of three justices of the peace that may be chosen by the parties to determine in a "summary manner?" The probate judge is a judicial officer of no inconsiderable dignity and utility in our system of legal administration. How, then, does it come that when we shall select three justices of the peace to make a summary dispo-

sition of his contest as to an office, no appeal to a higher tribunal is allowed if an appeal is provided by law as to all other officers of an inferior grade?

Again, suppose the parties contestant shall select the district court instead of three justices, to determine the contest. The court must simply try the cause upon the evidence, and give its judgment. Can the dissatisfied party appeal to the supreme court? The trial is in a summary manner, without the "order and solemnity of the law being observed," or, in other words, without the observance of the technical rules and forms in practice. From what errors in proceedings can the party appeal? Does the party appeal from the court's judgment upon the evidence? The judge has been constituted the judge in a summary manner, in a case where no jury can intervene. Is there, then, any verdict of a jury or any finding of a court where the parties have dispensed with a jury from which a new trial may be moved for, granted or refused, and error assigned upon the court's judgment? And all know that witnesses can not be introduced into the supreme court.

We have examined this section to show that the law has not provided nor intended any appeal in contests under its direction in cases of probate judges, all of which strengthens our argument upon the proposition that, in those proceedings directed by statute as summary proceedings, no appeal can be allowed or taken to a higher tribunal unless expressly or by clear implication it shall be granted and permitted in the particular act directing the summary proceeding. In such a contested election as the statute directs in this case we do not think that an appeal is given either expressly or by implication. The statute points out who may hear, without the incumbrance of forms, the case between the contestants and their steps. It will not be forgotten that the contest is solely between the parties, and that the public is not in any way a litigant in the controversy. Two persons claim the enjoyment of the office. One is in possession, administering its functions and enjoying its emoluments, and recognized by the laws to have full power and authority, so far as third parties are concerned. The other

seeks to displace the incumbent, and be himself installed and become the recipient of official honors and profits. Let the contests be determined as they may, we are not called upon to point out what remedial process still remains in the hands of public authority to cause the claims of any usurper or intruder into a public office, or any one who has no right to be its incumbent and attempt its duties, to be arraigned, tried, and determined.

In describing the summary manner of proceeding in causes of civil claimants to an office after an election, it seems as if the legislature itself intended to put a speedy and certain end to litigation between parties about a public matter so well calculated to promote and perpetuate discords and feuds in precincts and counties, and destroy confidence in the local magistracy, and diminish their efficiency. From the heat and unscrupulousness too often the attendants upon partisan passions, and from other causes, errors and wrong, doubtless, will too often enter into the decisions of probate courts in election cases, frauds will go uncorrected, and partisan and political favorites have an undue advantage on the trial of contests. If so, the means of remedying the evil is with the legislature. Its needed and prompt action, with a more enlightened and lively sense of private, public, and legal justice, would soon remove all just cause of complaint. The remedy by appeal, heretofore allowed and sustained by the courts, proved of small avail, let right and justice have lain where they may. The courts are so established, that the case must be very rare, in which a contest can be instituted and appealed from court to court, and litigated until a final decision from this bench, before the term of office of a justice of the peace will expire by time and operation of law. During the whole term, however fallacious may be the acting incumbent's claim, still, by workings of his appeal, although decided against in all the courts, he continues himself in the enjoyment and emoluments of the office until succeeded by a new election.

In overruling the decision of this court, upon the power of appeal in the case referred to, we are not discouraged in

our sense of duty by the reflection that heavy and important interests as to property and persons have grown up, under the protection, and by virtue of that decision, which our present rulings would disturb, embarrass, and destroy. No such interests have arisen. If they had, we would long have hesitated touching the question discussed, let our opinions have been as they may. Circumstances may sometimes exist, when a court should pass previous adjudications as a "sealed book," though they may have been erroneously made at the beginning.

From this opinion it follows, that in our judgment the district court erred, both in dismissing the suit and overruling the motion to dismiss the appeal. The motion to dismiss went back to the beginning of the contest, and alleged the notice to have been insufficient, besides other grounds; upon which one the court rested its judgment we are left to conjecture; at all events, it did dismiss absolutely the whole suit, the entire cause itself, and of course all and every proceeding from the first notice down to the moment of its action. The judgment of the court below is reversed, and this cause is remanded to the district court, with directions to dismiss the appeal, and adjudge the costs of the same against the appellant, the costs in this court to be paid by the appellee. This court gives no judgment as to the costs in the probate court.

Reversed.